O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JACQUELINE MAE KENNERSON,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. ED CV 14-01290-DFM<br><br>MEMORANDUM OPINION AND ORDER |

　　　Plaintiff Jacqueline Mae Kennerson ("Plaintiff") appeals the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB"). Because the decision of the Administrative Law Judge ("ALJ") was supported by substantial evidence, the Commissioner's decision is affirmed and the matter is dismissed with prejudice.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

　　　Plaintiff filed her application for DIB on March 26, 2012, alleging disability beginning on July 6, 2010. Administrative Record ("AR") 10. Plaintiff's date last insured was December 31, 2011. AR 12. Plaintiff was not

represented by counsel at her administrative hearing. AR 38-41. The ALJ issued an unfavorable decision finding that Plaintiff could make an adjustment to other work that exists in significant numbers in the national economy, based on the testimony of a vocational expert ("VE"). AR 21.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ erred by failing to properly: (1) consider Plaintiff's fibromyalgia and other impairments; (2) evaluate Plaintiff's credibility; and (3) develop the vocational record regarding Plaintiff's ability to perform other work. See Joint Stipulation ("JS") at 3-4.

## III.
## DISCUSSION

### A. The ALJ Properly Considered Plaintiff's Fibromyalgia

Plaintiff contends that the ALJ erred at step three of the sequential analysis by failing to properly analyze her fibromyalgia under Listing 14.09D for inflammatory arthritis. JS at 6-9; see 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 14.09D. Plaintiff further argues that the ALJ erred by failing to consider the combined effect of Plaintiff's impairments in determining her residual functional capacity ("RFC"). JS at 9-10.

#### 1. Listing 14.09D

Social Security Ruling ("SSR") 12-2p, Evaluation of Fibromyalgia, states that once a claimant is determined to have a medically determinable impairment of fibromyalgia, the ALJ must then consider whether the claimant's impairments "meets or medically equals the criteria of any of the listings in the Listing of Impairments." SSR 12-2p. Because fibromyalgia is not a listed impairment, the ALJ must "determine whether [it] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other

2

medically determinable impairment." Id.; see 20 CFR Pt. 404, Subpt. P, App. 1, Listing § 14.09D (Listing 14.09D requires: "Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: (1) limitation of activities of daily living; (2) limitation in maintaining social functioning; and/or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace."). The ALJ did not undertake this analysis, but instead considered Listings 1.02A, 1.04, and 12.04. AR 12-13. Plaintiff argues that if the ALJ had considered Listing 14.09D, he would have found that her fibromyalgia, in combination with her other impairments, medically equals that listing's requirements. JS at 6, 9. Plaintiff's argument lacks merit.

Plaintiff has not satisfied her burden of showing that the ALJ's alleged error in failing to consider Listing 14.09D affected her substantial rights or resulted in prejudice. See Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights."). Plaintiff offers nothing in the way of analysis that purports to compare her condition to that described in Listing 14.09D. Further, based on the evidence before the ALJ, Plaintiff fails to satisfy all of the criteria necessary to medically equal this listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 14.09D. Listing 14.09D requires, in part, a "marked" limitation in one of the following: daily living, social functioning; or completing tasks in a timely manner due to deficiencies in concentration; persistence, and pace. Id. The ALJ considered similar criteria when assessing whether Plaintiff satisfied the "paragraph B" requirements of Listing 12.04 for affective disorders. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 12.04, ¶B (requiring at least two of the following: marked restriction of activities of daily

3

living; marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace). The ALJ concluded that Plaintiff did not have any "marked" limitations, as described in paragraph B of Listing 12.04. AR 13. The ALJ's finding is supported by substantial evidence and is not challenged by Plaintiff. Thus, even if the ALJ had assessed Plaintiff's fibromyalgia against Listing 14.09D, his analysis under Listing 12.04 would have precluded a finding that Plaintiff's condition medically equals Listing 14.09D. AR 13. Therefore, Plaintiff is not entitled to reversal or remand based on the alleged error at step three.

      2.    RFC

Plaintiff contends that the ALJ failed to properly consider Plaintiff's fibromyalgia, her right hip impairment, and the totality of the medical evidence in determining her RFC. JS at 9-10.

The ALJ found Plaintiff has the following severe impairments: osteoarthritis, degenerative disk disease of the lumbar spine, fibromyalgia, status post multiple bilateral knee surgeries, including right knee replacement, and depression. AR 12. After careful consideration of Plaintiff's impairments, as described in the voluminous medical record, the ALJ found that Plaintiff retains the RFC to perform a range of sedentary work, but is unable to climb ladders, ropes and scaffolds, is limited to occasional stooping, crouching, kneeling, crawling, and climbing of ramps and stairs, and would be off task for up to 10 percent of the workday in addition to regularly scheduled breaks. AR 14. In assessing Plaintiff's RFC, the ALJ explained that he gave weight to the opinions of the state agency medical consultants who opined that Plaintiff could perform a range of sedentary work. AR 19, 83, 85-86, 97, 99-100. The ALJ also gave consideration to some of Plaintiff's subjective complaints, and therefore, included additional postural and mental imitations in Plaintiff's RFC. AR 19.

The record supports the ALJ's RFC assessment. AR 15; see SSR 96-8p (RFC is the most that an individual can still do despite her limitations); 20 C.F.R. § 404.1545(a). While Plaintiff's medical records document a history of fibromyalgia and reports of diffuse pain, Plaintiff had been able to work as a certified nursing assistant with these conditions for nine months before her alleged onset of disability. AR 15, 276-79; see Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) (upholding finding that the claimant's back problems were not disabling where that impairment had not prevented her from working). Plaintiff also indicated that she had stopped working in July 2010 after injuring her back during a fall at work, a reason apparently unrelated to her fibromyalgia. AR 15, 48-49. Plaintiff's medical records during the relevant period show that her fibromyalgia was treated with medication, and in March 2011, her condition was reported as "stable." AR 15, 504, 821-22, 1572, 1615. Thus, while Plaintiff has been diagnosed with fibromyalgia, Plaintiff does not point to any medical records establishing any significant limitations on Plaintiff's basic work abilities caused by her fibromyalgia beyond those already found by the ALJ in the RFC determination. AR 15, 504, 821-22, 1572, 1615.

The ALJ also adequately accounted for Plaintiff's right hip complaints. AR 15-18. The ALJ noted that Plaintiff initially reported low back and hip pain after her injury at work. AR 15, 1306. In August 2010, Plaintiff's physician reported that Plaintiff exhibited no overt pain behavior, had level hips, moved from sitting to standing without difficulty, and walked with a normal gait, even though she had a markedly limited lumbar range of motion and positive straight-leg raise on the right. AR 16, 505. More than a year later, in October 2011, Plaintiff began complaining of acute pain in the right hip. AR 1779-80. However, x-rays revealed no acute osseous findings and only very mild arthritic changes of the right hip joint. AR 1785. Similarly, in February 2012, x-rays indicated only mild joint space narrowing and mild osteoarthritis

of the right hip. AR 1961. Plaintiff does not point to any medical records establishing any significant limitations associated with Plaintiff's right hip impairment, prior to her date last insured.[1] Thus, based upon the state agency physicians' opinions and the medical record as a whole, substantial evidence supports the ALJ's RFC assessment. AR 14.

Accordingly, Plaintiff is not entitled to reversal or remand on this claim.

**B.     The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff asserts that the ALJ improperly rejected her allegations regarding the severity of her symptoms. JS at 14-17.

If there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). An "ALJ is not required to believe every allegation of disabling pain," and may use "ordinary techniques of credibility evaluation" to assess the credibility of Plaintiff's allegations, including examining "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)

---

[1] The ALJ acknowledged that the medical records indicate that Plaintiff's condition deteriorated after her date last insured. AR 17-18, 2198, 2203-04. In June 2012, an MRI of Plaintiff's pelvis revealed advanced arthritic changes in the hips and avascular necrosis on the right side. AR 2213-14. In September 2012, Plaintiff underwent total right hip replacement surgery. AR 17, 2202-04. The ALJ reasonably concluded that although Plaintiff's condition had worsened after the relevant period, the medical record did not support greater limitations than those included in Plaintiff's RFC, given the totality of the medical evidence. AR 17-18; see Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (where evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld).

(internal quotations omitted).

Plaintiff claims that she is unable to work because of the pain and limitations caused by severe arthritis and other impairments. AR 15, 51-63. The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's claims concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with Plaintiff's RFC for a range of sedentary work. AR 15.

In support of this adverse credibility determination, the ALJ gave legally sufficient reasons for discounting Plaintiff's credibility. First, the ALJ found that Plaintiff's allegations of disabling limitations were contradicted by the medical evidence. AR 17-18; see Burch, 400 F.3d at 681 (ALJ may consider the inconsistency between claimant's subjective complaints and objective medical findings in the credibility analysis); see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (stating that even if a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). For example, although Plaintiff claimed that she "experiences pain at a level of 6-or-7 out of 10 most days," and that pain medication did not help, the treatment records of Plaintiff's pain management specialist, Dr. Louis Noto, contradicted Plaintiff's statements. AR 18. In April 2011, Dr. Noto reported that Plaintiff was "doing well" after undergoing repeat total right knee arthroplasty in March 2011. AR 17-18, 1250. By August 2011, Plaintiff informed Dr. Noto that she was "doing very well" overall. AR 17-18, 1521. Plaintiff also reported that she was riding her bicycle for 20 miles several times a week, and that she had less need for pain medication on days when she was more active. AR 1521, 1963. Though Plaintiff began complaining of increased back pain at that

time, a steroid injection in September 2011 resulted in significantly improved symptoms. AR 16, 1763, 1963. The ALJ properly considered the physician assessments in weighing Plaintiff's credibility. Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) (stating that the ALJ may consider information from physicians regarding the nature and effect of a claimant's symptoms). Further, although Plaintiff emphasizes her long history of fibromyalgia, as discussed above, the ALJ reasonably considered Plaintiff's ability to work with this condition. AR 15, 276, 279; Gregory, 844 F.2d at 667.

Second, the ALJ properly discounted Plaintiff's credibility to the extent her complaints of being unable to work were inconsistent with her reported activities of daily living, which included caring for her 7-year-old grandson and riding a bicycle several times a week. AR 13, 17. The ALJ found that Plaintiff's admitted activities conflicted with her claims that her osteoarthritis and other impairments prevent her from being able to work or take care of herself. AR 13, 15, 17-18, 51-63, 203-06, 1572. While Plaintiff claims that her grandson actually helped with her work and she is no longer able to ride a bicycle, the ALJ reasonably found Plaintiff's activities suggested greater physical capacity than alleged by Plaintiff. AR 15, 51-63, 203; see Molina, 674 F.3d at 1113 ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant to the extent that they contradict claims of a totally debilitating impairment."); Light, 119 F.3d at 792 (inconsistencies between testimony and conduct may be considered in weighing a claimant's credibility).[2]

---

[2] The Court is mindful of recent Ninth Circuit authority holding that an ALJ errs in citing a claimant's daily activities as basis for rejecting her allegations without "elaborat[ing] on which daily activities conflicted with which part of Claimant's testimony." Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014). However, the Court finds that this case is distinguishable, as

1   Because the ALJ identified sufficiently specific, clear, and convincing
2   reasons for discounting Plaintiff's subjective complaints about the intensity,
3   persistence, and limiting effects caused by her impairments, reversal is not
4   warranted on this basis.

5   **C.    The ALJ Did Not Err in Determining that Plaintiff Can Perform**
6   **Other Work**

7   Plaintiff contends that the ALJ erred in finding that Plaintiff was not
8   disabled at step five of the sequential analysis because the VE did not provide
9   the Dictionary of Occupational Titles ("DOT") numbers for the sedentary jobs
10  Plaintiff was found capable of performing, i.e., assembly, packaging, office
11  helper/clerk, and order clerk. AR 68. In particular, Plaintiff argues that
12  remand is necessary for further development of the record to resolve whether
13  "there are any inconsistencies or conflicts either actual or apparent in the
14  occupational information provided by the [VE]." JS at 25. Plaintiff asserts that
15  because she was unrepresented at the hearing, further development of the
16  record is required to specify the DOT numbers of the identified occupations,
17  pursuant to SSR 00-4p, HALLEX rules I-2-5-55 and I-2-6-74, and Program
18  Operations Manual System ("POMS") rule DI 25015.030. JS at 26-28.
19  Plaintiff's argument is not persuasive.

20  An ALJ may rely on a VE's testimony that identifies general
21  occupational categories rather than specific jobs within that category. See
22  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1176 (9th Cir. 2008) (concluding
23  that VE's testimony that someone with the claimant's "limitations could
24  perform 'small product assembly jobs at the sedentary level' and 'packaging

---

the ALJ adequately identified specific activities that were inconsistent with Plaintiff's allegations of disabling limitations and impairments. Thus, the ALJ properly considered Plaintiff's daily activities in discounting her credibility.

and sorting jobs' existing in significant numbers . . . [was] sufficiently specific to identify jobs that match [the claimant's] abilities"). Neither SSR 00-4p nor the rules cited by Plaintiff impose any obligation upon the ALJ or the VE to make express findings regarding the DOT job numbers. Rather, SSR 00-4p states that the ALJ is responsible for: (1) asking the VE if the vocational evidence conflicts with information provided in the DOT; (2) obtaining "a reasonable explanation" if there is such a conflict; and (3) explaining in the decision how the conflict was resolved. SSR 00-4p; see also HALLEX I-2-6-74 ¶E and POMS DI 25015.030; Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) ("[T]he ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]."). The ALJ satisfied these requirements.

At the hearing, the VE testified that a person with Plaintiff's abilities is capable of performing sedentary level assembly jobs with 5,000 of those jobs available in the state, packaging jobs with 10,000 jobs available, officer helper/clerk jobs with 10,000 jobs available, and order clerk jobs with 9,000 jobs available. AR 68. The ALJ asked the VE if the testimony was consistent with the job descriptions in the DOT, to which the VE responded in the affirmative, with the exception of the office helper/clerk job, which is designated as light work, but often performed at the sedentary level. AR 68-69. The ALJ then found in his decision that "the [VE's] testimony is consistent with the information contained in the [DOT]." AR 21. Thus, it is clear from the record that the ALJ fully complied with SSR 00-4p. Further, even if the cited POMS and HALLEX rules were construed to suggest that further development of the record is required in this case, they would not be judicially enforceable. Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1073 (9th Cir. 2010) ("Like HALLEX, POMS constitutes an agency interpretation

10

that does not impose judicially enforceable duties on either this court or the ALJ."). The VE's testimony constitutes substantial evidence supporting the ALJ's step five finding that there are a significant number of jobs in the national economy that Plaintiff can perform. See Stubbs-Danielson, 539 F.3d at 1176; 20 C.F.R. § 404.1566(a).

The Court therefore finds that the ALJ's decision at step five is supported by substantial evidence and the ALJ's reliance on the VE's testimony does not constitute reversible error.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is affirmed and the matter is dismissed with prejudice.

Dated: June 25, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge